# MOBILE & OHIO R. R. CO. *vs.* WESTLEY THOMAS.

[ACTION BY EMPLOYEE TO RECOVER DAMAGES FOR INJURY TO HIS PERSON.]

1. *General demurrer.*—There is no error in overruling a demurrer which amounts to a general demurrer.

2. *Action by employee against railroad.*—In an action by an employee against a railroad company, for an injury to the employee, it is not necessary to aver in the complaint the place where the injury was sustained.

3. *Respective liabilities of railroad, as to injuries to passengers and servants.* Where the passengers on a railroad are injured, in consequence of a defect in any instrument employed by the railroad, it is a presumption, disputable, but not conclusive, that the injury resulted from negligence. But the same principle does not prevail in reference to servants of a railroad ; in the latter case, the *onus* of proving negligence is upon the injured servant.

4. *Railroad's duty in furnishing engines ; on whom onus of proving negligence for injury to servant.*—It is not an absolute duty of a railroad corporation to furnish a suitable and safe engine. It is its duty to use due care and diligence to furnish such an engine. When an injury has occurred to a servant of the corporation, in consequence of a defect in an engine, and he sues the corporation for such injury, the burden is upon the plaintiff to show negligence, or the want of care and diligence in the defendant corporation. The *onus* of proof is not shifted to the defendant, by the fact that an injury has resulted from the defect.

5. *Notice ; agency.*—Notice to servants of a railroad corporation, who were agents of the corporation, to receive notice of defects in engines, would affect it with notice.

6. *Mechanics charged with repairing—negligence.*—An artisan charged with a duty of repairing, within the scope of his handicraft, is not conclusively shown to have been negligent, by a failure to remedy some defect specifically pointed out to him ; for he may have attempted to remedy it, and exhausted the skill and care of his art, and yet from some defect in material, or some other cause, beyond the detection of ordinary caution and care, may have failed to altogether cure the defect.

7. *Liability of employee for injury of a servant by another servant.*—The rule is well established in this State, that " when two persons are employed by a common employer, in the same general business, and one of them is injured by the negligence of the other, the employee is not responsible therefor," provided he has used due care in procuring competent and fit servants.

8. *Abstract charge.*—A charge which, in the abstract, asserts a correct proposition of law, but entirely excludes from the consideration of the jury the defensive matter of the case, is defective.

9. *Question of notice to railroad corporation of unsafeness of engine.*—If a railroad employs an engine, which from its make and construction, is unsafe, and knew thereof, or would have known thereof, by the exercise of reasonable care and diligence, it would be responsible to one of its servants for injuries caused by such defect, in make and construction, after it was known, or ought to have been known to the railroad, if the defect was unknown to the servant ; but the railroad is not chargeable with *notice* of the unsafeness *growing out of the make and construction,* from the use of such engine for several years. This would be a circumstance for the jury to consider in determining the question of notice, but it does not raise a legal presumption of notice.

10. *Agency.*—The question whether the authority to receive notice of a fact was within the scope of the duties of an agency, is, upon ascertained facts, a question of law.

APPEAL from the Circuit Court of Mobile.
Tried before HON. C. W. RAPIER.

WESTLEY THOMAS, (appellee,) instituted his suit against the Mobile & Ohio Railroad Company, (appellant,) on the 20th September, 1865, to recover damages for an injury to his person. The complaint on which the cause was tried consists of one count, viz :

" The plaintiff claims of the defendant, which is a corporation, forty thousand dollars, damages, because he says the defendant was at the time of committing the grievances, hereinafter, engaged in the business of running cars on its road from Mobile to a point on said road, beyond where the injury herein complained of occurred, for the transportation of freight and passengers ; and it was the duty of defendant to have upon said road good and safe engines and other vehicles, and in good repair, and to have them run with care. That the plaintiff was in the employment of defendant as fireman, and was, by said employment, required to be on the engine and tender run by defendant ; that heretofore, to-wit, on 31st May, 1866, while in such employment, and on the trip from Mobile up said road, the engine being used, and on which plaintiff was on duty, ran off the track of the road near Citronelle, on said road, and cut off the right arm of plaintiff, and greatly scalded him with hot water, and mangled and bruised him ; that he was from said injuries sick a long time, and suffered great pain, mentally and bodily, and was put to great expense in and

about his cure, to-wit, one thousand dollars, and was permanently disabled by the loss of his arm and the scalding aforesaid, and that said engine ran off the track, and said wrongs were suffered because of the wrong and gross negligence of defendant in running on said road said engine, which was out of order and unsafe, and unfit to be in said business, and which, but for the want of proper care and diligence, would have been known to defendant, and all of which was unknown to plaintiff." The other counts of the complaint were abandoned by the plaintiff.

Defendant demurred, and assigned the following causes of demurrer. 1. Said complaint does not set forth a sufficient cause of action. 2. The alleged cause of action is uncertain ; it does not appear whether the liability is charged to rest on negligence of agents or on defect of engine. 3. Does not set forth where said wrongs occurred.

\* \* \* \* \* \* \*

6. It appears that plaintiff was an employee of the company, and the matters alleged do not make such case as will charge defendant. 7. Complaint is not sufficiently certain and specific. The court overruled the demurrer, and the cause was tried upon the plea of " not guilty." The jury found a verdict for plaintiff of sixteen thousand dollars.

On the trial the defendant reserved the following bill of exceptions : "The plaintiff claimed damages for an injury, received while he was in the employment of said company as a fireman, on an engine of the company, No. 69, which ran off the track and upset, by which he was scalded and severely hurt, so that it became necessary to amputate his right arm. He proved the injury to his person, great mental and bodily suffering, the injury of his health, expenses of medical attendance, nursing, loss of time, &c.

The plaintiff introduced evidence tending to show, that the said engine, No. 69, was put on the track of defendant's railroad for regular trips on the 31st of May, 1865, on which day he entered into defendant's employment to run on the road as a fireman ; that the engine left Mobile in the evening to run on the road of defendant, northwesterly, and when she had reached a place beyond Citronelle, say

about 37 miles above Mobile, she ran off the track in going around a curve, on a down grade, when the accident occurred ; that the engine was in charge of one Lewis, as engineer, who was dead at the time of trial.  A witness for the plaintiff, who was an engineer of some experience, having been engaged for five or six years in running engines on defendant's road, and who was also an employee of the company, deposed that he was on the train, but not at that time on duty ; that some time before the occurrence he was riding on the cow-catcher or pilot in front of the engine, and had observed, that in going around the first curve on a down grade, after leaving Whistler, some six miles from Mobile, the truck did not run right ; that the wheels bound over the outside of the curve and did not curve well, and he had seen sparks of fire fly from the contact of the wheels with the rail ; that he told the engineer in charge, that he thought the truck dangerous ; that he told him about it twice before reaching Citronelle ; the engineer replied that it could not be helped now ; that he observed the engine to Citronelle ; that on reaching Citronelle, he, the said witness, concluded to leave his position on the engine, where he had been riding, because he considered the engine unsafe, and because he believed she would run off at the first curve on a down grade ; that he retired to a baggage car in the rear of the engine, stood at the door, and watched the engine going around the curve, expecting to see her run off when the accident did occur ; that they were running at the rate of ten or twelve miles per hour when this happened.  The witness did not tell plaintiff of the danger, and there was no proof that he knew of it.  He testified that he did not know of it, but thought the engine was as good as any.  The witness did not point out any defect in the engine, and testified that he did not know what produced the binding of the wheels on a curve.  It appeared in evidence, that the engine, No. 69, was one of what was called the " Mason engines", manufactured by James Mason, at Taunton, Massachusetts, and was run on what was known as a Mason side bearing truck, being the ordinary make of that manufacturer.

It further appeared in evidence that the trucks, now ordinarily used, are what are called the center bearing trucks, the difference between them being that the latter bear on the truck by a center pivot bolt, and in the former the weight of the forepart of the engine rests on two side upright supports, made of iron, which are made to vibrate, backward and forward, with an iron bolt attached to the boiler, and passing through an iron plate in the bed of the truck, so as to allow the truck to turn, which uprights are let into mortices in the frame of the engine. The plaintiff introduced evidence, conducing to prove that the Mason side bearing truck was unsafe, and not as safe as the center bearing truck, and some said they objected to going on them for that reason, and that the center bearing truck was more safe and should be used. One of the defendant's witnesses, who was their foreman in the machine shop, testified, that he had been engaged in building and repairing engines for 23 or 24 years; that he knew the Mason engine; that the first Mason truck he ever saw, was on the Mobile and Ohio Railroad, and that he far preferred the center bearing to the Mason side bearing truck.

The plaintiff further introduced evidence conducing to prove, that this same engine, No. 69, had been used before and during the war, and was subject to the falling of the front of the engine on the truck by reason of the side supports getting out of the mortices, in which case the truck could not track, and that this had happened frequently, and that the engineer had to stop and raise it up with jack-screws to put the supports again in the mortices, and that this had happened sometimes several times in a day, and that the engine had been under repairs and not used for some time; and further, that the assistant general superintendent, and master mechanic, and foreman of the shop, had been informed of this when it had occurred. It was further shown by the engineer, who had run engine No. 69 for fourteen months, that it had run off the track with him just before it was laid aside for repairs.

It further appeared in evidence, that a report of all accidents occurring on the defendant's railroad, is by its rules ordered to be made; the particulars of such accidents

set out in writing, and a record of the same kept by the company; but it was not shown that any such reports had been made of this engine.

There was no other evidence of the particular cause of the running off of the track, where the accident occurred, than is set forth in this bill of exceptions. It took place, not at a joint of the rails, but at the middle of a rail, and the track being in good order. The plaintiff relied on the evidence, as before stated, of defectiveness of the truck, and of the observations of the witness, as above stated, to show the cause.

The defendant offered evidence, tending to prove, that the officers and servants of the company were a general superintendent engineer, an assistant superintendent engineer, a superintendent master mechanic, and machinist, who had charge and superintendence of the machine shop of the company, situated at Whistler, on the road near Mobile; also master workman mechanics, and machinists, engineers, conductors, and laborers required; that the superintendents, machinists, &c., were men fully skilled, and competent in every respect, properly educated for their business, and of good character.

The defendant offered evidence, tending to prove, that the said Mason engines were of an approved character, and had been in common use, and found to be satisfactory; that in point of fact the side bearing engines were as safe as the center bearing engines, or trucks, and had so proved in defendant's service; that the center bearing were now in use, and had in a great measure superseded the side bearing, and that the company had, since the accident occurred, the engine, No. 69, to be made center bearing, and that the alteration was made because the center bearing was more economical, and because some of the engineers of the company, after this accident, objected to running this engine without such alteration. The defendant offered evidence, tending to prove, that the center bearing engine was less complicated, more economical and durable than the side bearing engine. This was testified to by competent and skillful engineers. The defendant also introduced evidence, tending to prove, that the engine,

No. 69, with three others of the same make, had been in use by the company from 1859 or 1860, and had been found to work well; that, however, during the war the engine, No. 69, had been so much used, that parts of it had been worn out, and the springs under the side supports had been worn out; that the company had not been able to procure the necessary materials for its repair during the war, and it had become unfit for use and was laid aside; that after the war was over, engines were very scarce, and that this engine was put into the shop at Whistler, and thoroughly overhauled and repaired, wherever necessary, but on the same model as before; that new springs and wheels were put on the truck, and it was, under the superintendence and personal attention of the chief machinist, put in complete order, and pronouned by him ready for use, but there was no other proof, that in making the repairs, any particular attention was paid to the special defect. Defendant's witnesses admitted the possibility, but denied the probability, that such a defect could exist as to cause the tenons to jump out of the mortices or sockets, and thereby prevent the truck from yielding to the curves in the road, if the springs were in good order; that the foreman of the workshop, an experienced engineer and machinist, pronounced the engine ready, and on the morning of the accident, put it on the road for service; before doing so, he tried it by running it up and down the road in curves, and up and down grades, and had for the purposes of trial, run it at the utmost speed that could be obtained—say at the rate of sixty miles an hour—and found that it worked well in all respects, and therefore had put it on the road. There was no proof of examination of the .engine or truck after such trial. A former superintendent of the machine shop, under whose direction the repairs were made, testified also that the engine and truck were fully repaired, complete and safe, and fit to be used.

Several witnesses were examined on both sides as to the safety of the side bearing truck, and the evidence was conflicting on that subject; the officers of the company testifying that the engine was safe, and the side bearing as safe as the center bearing; that the side bearing could not jump

out of the mortices, when the truck and engine were in good repair, although this might happen when the springs were worn out, so that they could not act, but that this engine was not then in that condition. Some witnesses considered them unsafe at all times. One of the plaintiff's witnesses testified, he had formerly run said engine three or four trips, and that it had not, while he used it, jumped out of the mortices. A witness for the plaintiff, who was a machinist and engineer of fourteen years experience, and an employee of defendant, testified that he had observed the peculiar construction of engine No. 69 at the time it was first put on the road; that he closely examined it and considered it then unsafe.

The defendant also introduced evidence tending to show, that it happens at times that engines do run off the track, and that it can not always be prevented, and that it happens at times when all is in perfect order, and there is no apparent cause for it.

Upon the foregoing evidence the plaintiff requested the court to instruct the jury as follows:

1. It was the duty of the defendant to have on the road suitable and proper engines, and to keep them in such condition, that unusual risks would not attend those who were employed to perform service on them ; and if they did not in this case have such an engine, and the plaintiff was ignorant of any defect in the engine, the burden is on the defendant to show that they used due caution and diligence in the matter.

2. If the jury believe this engine was defective and was unsafe from the liability of the engine to fall down on the truck, and that thereby the wheels would not yield to a curve in the road, thereby forcing the engine off the track, and that the plaintiff had no knowledge of the defect in the engine, and that those servants of the company to whom was entrusted the supervision and care and repair of its machinery, were agents of the company to receive such information, and were informed by the engine driver of that engine of the deficiency, and that the engine was repaired by said servants and the defect was not remedied, and the engine, from said defect, ran off the track and inflicted on

the plaintiff the injury complained of, the defendant is liable to the plaintiff for the damages by him so sustained, notwithstanding the engine was in other respects well and sufficiently repaired.

3. That if the plaintiff in this case, was by reason of a defect in the engine, of which he was ignorant, and which defect was not open to ordinary observation, exposed to unusual risks, and received the injuries complained of, and the master might have known of such defects by ordinary care, or if the agents of the company whose business it was to examine and keep said engines in order, and to receive notice of such defects, were duly advised of the defects, and did not remedy them, and by reason thereof, the plaintiff sustained the injury complained of, defendant is liable.

4. When the plaintiff entered the employment of defendant as fireman, he had a right to presume that the engine on which he was put to work was free from defects which would render the service unusually hazardous, and if such was not the fact in respect to the condition of the engine, but from a material defect in it, the truck was subject to become bound, so that the engine could not turn a curve in the road, without imminent danger of running off the track, and if such defect was not open to ordinary observation, and if the plaintiff was ignorant of the defect, and if the servants of the company whose business it was to keep the engines in order and receive notice of such defects, were informed of such defect, and did not remedy it, and if by reason of such defect the engine ran off the track at a curve, while the plaintiff was on her in the discharge of his duty, and that he thereby received the injuries complained of, the plaintiff is entitled to recover in this action such damages as he sustained by reason of said injuries.

5. That if the defect of the engine was made known to the agent of the defendant, the defendant would have notice, although he himself was not specially informed of the same.

6. That if the engines of the kind used in this case were, owing to their work of construction, unsafe, and defendant had been running them for several years, they may

be supposed to have known that they were unsafe, and if the jury believe such to be the fact, they must find for plaintiff if they believe he was injured by the running off of the engine, owing to unsafeness for such reasons.

7. If engines of the make of the one in question were ordinarily safe, but if the proof shows that the particular engine used in this case was unsafe, owing to any defect in it, and if defendant knew of this fact, or could have ascertained it by ordinary diligence, and that plaintiff was damaged by reason of such defect, plaintiff being ignorant of such defect, defendant is liable.

8. That in all cases when one person has received personal injury and mutilation by the careless or negligent act of another, the bodily pain and suffering is a part of the actual injury, for which the injured party is as much entitled to compensation in damages as for loss of time or the outlay of money.

9. That the physical pain and suffering ought to be taken into the account in estimating the damages in any action to recover for a personal injury, occasioned by negligence, irrespective of any question or motive whatever.

Which charges so asked were given, and to each and every whereof defendent excepted.

The court also charged the jury, that if there was a defect in the engine, causing it to be dangerous to use, and the company had notice thereof, it was the duty of the company to take steps to remedy such defect; and that if such notice was communicated to proper agents, who were authorized to receive such notice, or whose duties were such that authority to receive such notice would be within the proper scope of their duties and agency, then such notice would be sufficient to charge the company with such notice. To this charge defendant excepted. Defendant requested the following charges:

1. That in order to charge the defendant in this case, the negligence, if any, must be brought home to the defendants themselves, that is to say, to the president, directors, or general superintendent of their working operations.

This charge the court gave, but with the qualification,

43

" that if notice came to their agents authorized to receive such notice for the company, that it was notice to the company, as stated in the previous charge given." Defendant excepted to this qualification.

2. By the terms of the issue, which is to be tried, it is admitted the defendant had no knowledge of any deficiency in the vehicle used, and the question is confined to the inquiry, whether or not the defendant was negligent in not using proper diligence in respect thereto ; and that for the want of diligence, or by reason of such negligence, they were not informed of the deficiency, if any there was ; that the question is one of diligence or not, and they can be charged, if at all, only on the ground of their own negligence, or want of diligence, and such must appear in order to charge them.

3. That in this cause the plaintiff is to be considered as a fellow-servant with the machinist or master mechanic who put the engine on the road after its repairs and trial, and that if the fault be in said master mechanic, or his assistant workmen, the defendants can not be charged in this action for such fault, if any there be, if there be no negligence of their own.

4. That if after engine No. 69 was put in defendant's shop for repairs, and was repaired by the servants of the defendant, who were competent, skillful and careful men, and who made trial of her and reported her to the defendant to be safe and fit for running with safety and security upon the defendant's road in the defendant's business, and after that the accident and injury occurred, by reason of defectiveness of the engine, from the neglect of the mechanics of the company, the defendant can not be held responsible for the injury to the plaintiff. The court refused these charges, to which refusals defendant excepted."

Argument of P. HAMILTON, for appellant.—Let us see' in the first place, precisely the gist of the complaint. The allegations are :

1. The defendant was engaged in the business of transporting freight and passengers on its road.

2. It was the duty of defendant to use in this business good and safe engines and with care.

3. Plaintiff was a servant of defendant, and in the course of that service, was required to be on defendant's engine.

4. That while in performance of his service, the engine on which he was serving the defendant, ran off the track, and he was thereby injured and disabled.

5. That plaintiff suffered this injury because of the wrong and gross negligence of defendant in running this engine, which was out of order, and unsafe and unfit for this business; and that defendant would have known of this unfitness of the engine but for the want of proper care and diligence.

6. That plaintiff was ignorant of this, and therefore he claims damages; in other words, the plaintiff claims damages because—1, he was a servant of the defendant; 2, was injured in its service; 3, by an improper machine used by the defendant; 4, of which the defendant was ignorant; 5, but would have known, except for its want of care and diligence.

The reply of defendant is, it is not guilty of the wrongs complained.

To make out his case, plaintiff must make out the affirmation of his allegations, viz: that he was a servant of the defendant; was injured in its service; was injured by the use of an improper machine; that the defendant was ignorant of such improper machine being used; that this ignorance proceeded from want of proper care and diligence by defendant.

It is of no consequence that the defendant might or would be liable, if other and different allegations had been made. This liability in this case rests on the allegations *as made*. These furnish the guide to the court in this trial, and alone can be followed; and if the course pointed out by them be not followed, error has been committed. It was the duty of the court below to have followed this path, and to have kept the jury to the investigation of these specific allegations. They were what the defendant was called to meet; to force it to meet any other charge was an act of injustice, and, consequently, a clear error, and injurious to defendant.

That plaintiff was a servant of defendant, and was injured while in its service, was alleged and is not disputed; no difficulty is found here; nor that he was ignorant of any defect. That he was injured by an improper machine, then in the service of defendant, was to be proven; and, in addition, that this was unknown to defendant, but would have been known to it but for want of proper care and diligence, was also to be proven. These are the propositions of fact that were in issue and had to be established, and to these propositions the attention of the jury should have been confined.

I. And it is right here that the defendant complains of the action of the court below.

Any recovery to be had against the defendant must rest upon *its personal negligence* in relation to the matter complained of.—25 New York R., 566; 37 Law and Eq. R., 281.

This personal negligence may be evidenced in sundry ways.

The plaintiff has chosen to rest the charge of negligence upon the allegation that his right of action arises from the use injuriously to him by defendant of an improper machine, unknown to it, but which would have been known to it, by the use of proper care and diligence.

That is the complaint, and the only complaint that was to be tried—whether *defendant had been diligent or negligent in its action about the matter charged.*

The court below, however, refused to permit the case to be tried on that allegation, and specifically refused a charge asked by defendant to that effect, and so removed the whole case from the pleadings in the cause, and allowed the jury to wander unrestrained through the testimony in the cause, to see if they imagined a cause of complaint that could be sustained.

The second charge asked by defendant should have been given. It placed the case, where plaintiff in his complaint had placed it, upon the inquiry of the diligence of the defendant; " *that the question is one of diligence or not, and the defendant can be charged, if at all, only on the ground of its*

*own negligence or want of diligence, and such must appear, in order to charge the defendant."*

Certainly this charge should have been given—it was the law of the case—and should have governed the court no less than the jury.

It is in effect simply the assertion of the law of all cases, and becomes, if any thing, *now* when the intelligence of juries is lowered still more, than has ever before been, of the supremest importance.

II. The first charge asked by defendant should also have been given as asked ; and without qualification.

The complaint is " want of proper care and diligence" by the defendant ; then the fact to be shown is such absence of care and diligence by the party sought to be charged ; and the instruction asked, was, " *that such negligence must be brought home to the defendant, themselves—that is to say to the president, directors or general superintendent of its working operations.*" Of course, the negligence must be of the party to be charged. It is true, that negligence may be shown in sundry ways ; but the legal proposition is that a right of recovery must rest on defendant's negligence—it must be *his act*, which creates the liability.

The proposition asserted in this instruction is only the leading proposition of the complaint, and to a court it is deemed most self-evidently correct. This defendant, it is judicially known to the court, is managed by officers who, in the eye of the law, as to *these persons*, are the defendant. Hence, to make the matter plain to the jury, these officers were named as being for the purposes of the trial the defendant. The proposition of the prayer, is that the defendant, through its legal officers, must be shown to be guilty of negligence.

The court, however, carried off, apparently, by some fancy of its own, qualified the charge with a notion of notice. No matter of notices is contained in the prayer. It simply asserts that negligence in the defendant must be shown. The court says yes, true, but if notice came to authorized agents, it was notice to the company ; and so the court, laboring under the confusion of principal and agent, employer and employee, but misled the jury, and failed to

confine them to the proper point of investigation, to-wit, the question of negligence by defendant about the performance of the duty resting upon it, and directing them to inquire if in case negligence were found, whether that negligence lay at the door of the defendant, or if its employees, for which it would not be responsible, and there we say the court erred.

III. The same error runs through all the action and ruling of the court in the case. The court at all times failed to present to the jury, the true point for their investigation, that is, the question of negligence or diligence of the defendant; it constantly mixed up with the issue, assertions of agency and notice to agents and knowledge by them ; thus in the charge given by the court on its own motion, after giving an unexceptionable instruction so far as it went, that if the company had notice of defectiveness of the engine, it was its duty to remedy it, the court adds, " if such notice was communicated to proper agents who were authorized to receive such notice, or whose duties were such, that authority to receive such notice would be within the proper scope of their duties and agency, then such notice would be sufficient," &c. So in the second charge asked by the plaintiff, the question of diligence, or fault on the part of the defendant is ignored, and the liability is made to turn upon the conduct of servants and agents of the defendant.

In like manner, the knowledge and acts of agents, as equivalent to knowledge and acts of the defendant, is especially made the rule and guide to defendant's liability, in the third, fourth and fifth charges given by the court upon the prayer of the plaintiff.

It thus plainly appears from an inspection of the conduct of the court, both upon the charges given at the request of the plaintiff, the charge given by the court of its own motion, and its refusal to respond to the prayers of the defendant, that the court ignored the real point of inquiry presented by the pleadings, and authorized an examination and a decision by the jury upon matters collateral which did not necessarily settle the question to be decided.

By this mode of proceeding, injustice has been done to the defendant. Its liability has been declared not upon *proof of its* want of proper care and diligence in the duty resting upon it ; not *upon proof of its* neglect of duty, but upon evidence of the acts of its employees, for whose acts it may have been responsible, and for which again, it *may not be legally responsible.*

It may be, that the proof perfectly warranted the assertions of fact, assumed in these proceedings, and yet the inference may follow, that *legal liability* has not been established. It may be, that the assumptions are ingredients of the charge to establish the liability, but they are not all the necessary ingredients, and attention being directed to them alone, the essence of the issue, that is, the question of the defendant's diligence, or negligence, was, in truth, improperly withdrawn from the jury, to the detriment of the defendant.

IV. The error pervading the case is exhibited in the very first charge asked by the plaintiff.

The court declared it to be the duty of the defendant to have suitable and proper engines, &c. Now, the effect of this instruction to the jury is to declare, that the defendant *guarantees to its employees* the security of its engines. This is not the law. We are not considering the duty of this defendant to a stranger or a passenger.

The employee contracts with a railroad company in relation to that particular business. He knows there are dangers attending its pursuit. Both parties contract in reference to those dangers. There is danger attending the road ; there is danger attending the machinery ; there is danger attending the conduct of his co-servants. The employee contracts with reference to these things.

The company contracts that it will use all proper diligence and care to obtain and employ safe and suitable machinery. *That was its duty*, and it is liable for breach of that duty. "It is bound to exercise proper care and diligence in the selection of the agencies and instruments with or upon which it employs its servants ; and if it fail to do so, it will be liable to the servant for any injuries he may sustain therefrom."—*Noyes v. Smith*, 28 Vt. R., 59 ; *Seaver*

*v. R. R.* 14 Gray R. 466 ; *Wright v. R. R. Co.,* 23 Penn. 385 ; *Gillman v. R. R. Co.,* 10 Allen, 236.

But that is a very different proposition from the assertion of the court, which declares an absolute duty.

It is true some qualification is introduced at the close of the charge, but it does not relieve the charge of its error in the statement of the duty, to add that some excuse might possibly exist for a failure in the alleged duty. The duty as alleged did not exist, and the jury were misled by a false assertion of law, and they were improperly informed, that to relieve defendant of this alleged duty, the burthen of proof was on defendant. The duty is wrongly stated, and the burthen of proof is improperly placed. The duty of defendant was to use diligence, and it was equally the duty of the plaintiff to prove that *that duty* had not been performed. The plaintiff must establish his case, and even in the case of a passenger.—18 N. Y. R. 534 ; 40 Penn. R. 399.

V. The second, third and fourth instructions asked by plaintiff, and given by the court ; the charge given by the court of its own motion ; the qualification to the first charge asked by the defendant, and the refusal by the court to give the third and fourth charges asked by defendant, show the theory adopted by the court.

We have already remarked upon the departure by the court, in these proceedings, from the *true issue* presented for trial.

The rulings of the court, and its whole proceedings, proceed from one and the same error—it is presented in several aspects. The court confounded the liability of the defendant towards this plaintiff, who was one of its employees, with its liability towards a passenger, who is a stranger to the company. To the latter, the company is in the position of a sort of guarantor. To him it is known, and becomes responsible by the acts of its servants and agents in their several capacities. In the line of their several duties, these servants or employees of the company, as relates to such stranger, are its agents, and it is bound by their acts.

It will be observed, in its decisions upon these several charges, the court constantly confound the company with

its servants, and held their acts to be its acts, their knowledge its knowledge, their negligence its negligence, and their duty its duty.

The plaintiff, however, is not a stranger to the company, is not even a passenger ; he occupies no such position. He is himself an employee or servant of the company. He is one of its many employees, and is, of necessity, associated with others. He is a co-employee with them, and this creates a very different relation between him and the defendant from that held by a passenger.

This court, in *Cook, &c., v. Parham*, 24 Ala., page 36, held, " that where two persons are employed by a common employer in the same general business, and one of them is injured by the negligence of the other, the employer is not responsible therefor ; as a general proposition we all yield our assent to. It is too well established, both upon English and American authority, to be now controverted."

And the principle is repeatedly declared in all the leading courts of this country and of England.—25 N. Y. 565 ; 23 Penn. 385 ; 1 Law Rep. C. B. 291 ; 1 Law Rep. Q. B., 149.

This confusion of the court, and confounding the position of the plaintiff with that of passengers, towards whom the defendant holds fiduciary relations of the most stringent kind, deprived the defendant of a consideration of the real merits of his defence, and so wrought great injustice in the trial.

VI. The line of defendant's defence is readily seen by the bill of exceptions. It asserted that its duty was to use proper care and diligence in the selection and use of servants and instrumentalities ; that it had performed this duty ; that the accident complained of did not proceed from its negligence ; that if it proceeded from negligence at all, it was the negligence of the plaintiff's co-employees, and for which the defendant was in no way responsible. Now, it is very evident, that under the charges of the court, the attention of the jury was diverted from this defense altogether, and their consideration was directed to the acts of the plaintiff's co-employees, as if their acts were the acts of the defendant itself, and as if the defendant were, under

the circumstances, responsible for their knowledge and their acts.

VII. The law of the case, it is conceived, is fairly expressed in the fourth charge asked by defendant, viz : if the instrument, in the use of which the accident happened, was found defective, and being so defective, was put in shop to be repaired, and was repaired by the servants of the defendant, who were competent, skillful and careful men, and was made trial of by competent, skilful and careful men, and was thereupon by such competent, skillful and careful men, reported to the defendant, to be safe and fit for running with safety and security, upon the defendant's road, and in defendant's business ; and after that, the accident and injury happened by reason of defect from the neglect of the mechanics, servants as aforesaid, then the defendant is not liable.

Let us for a moment look at the ingredients of this proposition, as connected with the pleadings and proofs in the case.

The plaintiff avers that the business of the defendant consisted in running cars on its road for the transportation of freight and passengers ; that he entered the employment of the defendant to be engaged about that business, and it so devolved on him as part of his duty to be on the engine and tender engaged in the business of defendant. He therefore contracted in relation to that business, and in view of the risks that belonged to it, including the carelessness and negligence of his fellow-servants in the same business.—28 Vermont R. 62.

He knew perfectly well that the work or business of the defendant had to be performed by the use of machinery more or less dangerous ; that this machinery had to be managed and directed by men, employed like himself by this defendant ; that the defendant of and by itself could take no control or direction of any portion of this business, that it was to be *wholly* done by the plaintiff's co-employees.

Now on this evidently correct statement of the case, what was the duty of the defendant ?

Plainly its duty referred to, and could *only* refer to the selection of these employees. Of itself the defendant could

make no choice of machinery—it could not of itself run the machinery, nor repair the machinery, nor take any charge of it. Of necessity, then, its duty must have sole reference to its employees; and this duty must be either an absolute guaranty of the constant and uninterrupted and perfect conduct of its employees, or must be limited to some lesser amount of liability—to some smaller amount of duty.

It is submitted that the statement of the case furnishes the answer. Its duty is the use of diligence; such diligence as is possible among the affairs of men, and consistent with the position voluntarily assumed by the party dealing with it. If the former measure of duty were applied, then the employee has assumed no risk—has entered into no conditions—upon this, human affairs would cease, the requirement would be impossible of fulfilment.

Then the duty assumed is a duty of conditions and not an absolute duty; it is diligence that is required of it; that is, care, heed, heedfulness. This is what it must exercise. But this can be exercised only in one way, and that is in relation to its servants—what and whom it employs. If that be exercised, it is all the defendant can do. Of necessity this heed and heedfulness must have reference to the fitness of the employees for the duty, the service that is to be performed by him. His fitness is a question of his competence, skillfulness, and carefulness. If he has these, he has fitness for his duty or service, and the requirement resting upon the defendant, as the general employer, has been met and performed.

Now this is precisely the charge that was prayed by the defendant, and refused by the court.

It is contended that in this refusal, the court greatly erred, and its judgment should be reversed; that the requirements of the law are fully met by the prayer.

VIII. And so it is believed are all the authorities. The duty alleged in the declaration, viz: "to have upon said road good and safe engines and other vehicles, and have them run with care," is not sustained by the decisions. It is the statement of an absolute, unconditioned duty. If what has been said above be correct, the demurrer should

have been sustained; for the duty of the defendant was the use of diligence, and not the absolute duty of guaranty, as in effect declared by the court.

In 28 Vermont R. 59, the duty was alleged that "it was the duty of defendant to furnish an engine for the plaintiff to run (plaintiff was engine-driver,) that was well construct- ed and safe to the engineer, with the use of proper skill on his part."

The court remark, the rule is settled that there is nothing growing out of the mere relation of master and servant that raises the duty stated in the declaration; there is no implied obligation, in the absence of actual knowledge, and where no personal blame exists on the part of the master, that the engine is free from defects, or that it can be safely used by the servant. The law imposes no such obligation. Ib. p. 62. The court declares the rule "the master is bound to exercise care and diligence, that he brings into his service, only such servants as are capable, safe and trust worthy—and for neglect in exercising that diligence, he is liable to his servant for injuries sustained by that neglect." And cites, 3 M. and W. 1; ib. 63; 5 Eng. Law and Eq. 265; 24 ib. 77; 5 W. H., and Good. 352. And see 14 Gray R. 466; 10 Allen R. 233; 25 N. Y. R. 565; 29 Conn. R. 548.

So that the decisions, and they might be indefinitely mul-- tipled, declare the doctrine we contend for.

In the case of *Heard v. Vermont and Ca. R. R. Co.*, the plaintiff's intestate was an engineer in defendant's service, and was killed by the explosion of the engine he was run- ning; that the explosion occurred in consequence of the defective condition of the fire box, which had become cracked, and had not been repaired by defendant's master mechanic, and that he was guilty of negligence in not re- pairing, he having full charge and care of defendant's loco- motives. It was also in proof that this master mechanic had held that position for some time, and was a skillful and competent man for that purpose.

The defendant requested a charge of the court below on this proof similar to that asked in this case, which was re-

fused. The supreme court of Vermont held that refusal to be error.—32 Vermont R. 473.

It held that the company were not responsible to the plaintiff, an employee, for an injury occurring to a co-employee, and by the negligence of the latter, and upholds the general principle of the charge asked in this case by the defendant below.

It is well here to remark upon a mistake by that court in its reference to the case of *Wright v. R. R. Co.* They cite the case as decided by the Court of Appeals of N. Y. Their citation is of the case as decided, 28 Barbour Rep. The decision of that case was reversed by the Court of Appeals, 25 N. Y. R. 564, and reversed precisely on the point for which it was cited by the counsel for the plaintiff.

IX. And this brings us to the general principle which we consider to be involved in the case, and which is contained in the third and fourth charges asked by defendant.

The court will observe that this engine had just come out of the company's repair shop, and testimony was produced to show she had been thoroughly overhauled and repaired by competent and skillful men ; that before being put on duty she was tried by competent and skillful men, and pronounced secure and safe.

If that were the character of these mechanics, our proposition is, that defendant had done its duty, and this injury, great though it was, can not be laid to defendant's charge. That the company, the master, is not responsible to one employee for an injury arising to him from the negligence or misconduct of his co-employee.—*Cook v. Parham*, 24 Ala. R. 36 ; 1 Mees. & Welsb. 1 ; 4 Metc. R. 49 ; 5 Hill R. 592 ; 1 Seld. R. 492 ; 17 N. Y. R. 153 ; 18 ib. 432 ; 25 ib. 564 ; 3 Cush. 75 ; 9 ib. 112 ; 10 ib. 228 ; 5 Exchq. 343 ; 23 Penn. R. 386 ; 21 Ill. R. 20 ; 22 Ill. R. 633 ; 10 Allen R. 233 ; 5 H. & N. R. 142 ; 28 Eng. Law and Eq. 48 ; 24 ib. 396 ; 9 Exchq. 223 ; 1 Ellis' B. and E. 102.

The rule has been denied in a few cases, but the vast weight of authority sustains it.

The rule was emphatically denied by the Scotch courts, and they have been followed by one or two of the Western

States.   But more lately the House of Lords, on appeal from a Scotch case, has decided that the rule is the rule of the British law, without exception.—*Burtonshell Coal Co. v. Reid*, 3 Macquem R. 266, and 300 ; see *Gilman v. R. R. Co.*, 10 Allen R. 237.

` X. An exception has been sought to be made where the injury arises to an employee by the act of one in a superior grade of employment.   To some extent, in the courts of Indiana and Ohio, the distinction has been sustained, but it has been to a very limited extent.

The rule almost universally adopted is, that if the servants are under the same general control, and working to bring about the same result, they are co-servants within the rule.—32 Vermont R. 473 ; 25 N. Y. R. 565 ; 5 H. and N. 142 ; *Morgan v. Vale R. R. Co.*, Law Rep. Q. B. 149 ; *Tunney v. Midland R. R. Co.*, 1 Law Rep. C. B. 291.

In this case, if any negligence existed at all, it was in the mechanics of the defendant, co-servants of the plaintiff, who were employed to put this engine in repair, and they were working under the same general control and to bring about the same common object, to-wit : the running of trains on the railway for the transportation of freight and passengers.   The case falls fully within the authorities cited.

VI. The result of the rulings of the court resulted in a very heavy verdict—one almost unprecedented in the history of such litigation.   A common laboring man received at the hands of this jury $16,000.   In our judgment, this verdict and the judgment upon it amounts to error.   A candid examination of the case, we think, will satisfactorily show, that the whole theory of the court in this case is erroneous, and that, acting upon it, the jury were palpably misled, and induced to apply false scales to weighing the respective merits of the claim and defense, without stopping to dwell upon all the details of the propositions propounded by the court to the jury.   We believe the whole merits of the case are reviewed in the argument here addressed to the court.   The court assumed a wrong standpoint in failing to recognize any distinction between the liability of this defendant, as a master and employer, to its

servants, and its liability as a carrier to its passengers, and thus, not only committed a departure from the true issue in the case, but charged a duty upon the defendant in favor of the plaintiff that is not warranted by the law.

Argument of GEORGE N. STEWART, for appellant.—In addition to the argument of Mr. Hamilton, although it would seem the grounds therein are conclusive to show error in the court below, I beg leave to add the following remarks.

To entitle the plaintiff to maintain the judgment, he must be able to show that he made, in the court below, proper allegations conforming to the rules of the pleading; that the evidence accorded with those allegations, and warranted the recovery, and he must be able to indicate the very point which created the liability, and that it rested properly on such ground. He must be able to show, also, that there was no uncertainty in the issue found, and no misleading confusion of subjects on the trial, else the court cannot be certain that the recovery was right and proper. The case before us cannot stand the test of these requirements.

1. The declaration was not a proper one. It puts in issue two distinct grounds, resting on different principles. It first alleges "a duty of the defendant to have on the road good and safe engines and in good repair," and afterwards it charges that the engine ran off the track because of the negligence of the defendant in running the engine, which was out of order and unsafe, and which, but for the want of care, would have been known to the defendant to be unfit."

This involves two distinct complaints; one ground is charged as a positive duty, and makes the defendant a *guarantor* that the engine was safe, whether proper diligence was used or not; and this was joined with the other allegation involving only the requirement of care and diligence. These distinct grounds are joined in one count. We will ask on which of these two did the recovery rest? It has been shown by the argument of Mr. Hamilton, that no such duty of guaranty exists. It is clear that this is a defect in the complaint. It was demurred to, but the demurrer was overruled. If the ground of duty can be

maintained as a warranty in favor of a passenger plaintiff, it does not follow that it can in favor of a servant.

All that the servant can require in any case is *due care to provide* proper vehicles; and if sufficient and reasonable attempts and endeavors be made with intent to provide such, and the failure to attain the object is caused by the fault of a fellow-servant in the same employment, the defendant is not liable to his servant, if he has done all which such reason and care requires.

The attitude of the employer towards an employee is properly described in the case of *Hitchcock vs. Taylor*, in 4 Porter's Reports, 234. This decision never has been overruled, and is the true statement of the principle. If the vehicle is defective and the employee knows it, and can see it as well as the principal, he cannot complain of it. He engages in a business attended with some danger. The principal does not warrant its safety, and if he has used all proper care, both parties are on the same footing. If a defect exists which is known to neither of them, each party must exert his own intelligence and care. There is no guaranty by the owner of a vessel that she is seaworthy in favor of a seaman employed on her.—*Couch vs. Steel*, 24 Eng. Com. Law Rep. 77. The same principle is decided in *Seymour vs. Maddox*, 5 Eng. Com. Law Rep. 265.

There is another defect in the complaint. It is impossible to tell whether it relies on a defect in the plan and construction of the engine, or on its being at the time out of repair. In this the declaration is uncertain. It may be construed either way, and the defendant does not know on which ground the plaintiff will rely. The precise ground is not set forth by a direct allegation pointing it out; indeed, the defectiveness is rather stated by way of recital; which, in pleading, is insufficient. It is clear that the defendant is entitled to an allegation which is certain, so that he may know what he is to meet. In case of ambiguity, the rule is that such construction must be given which is most strongly against the pleader.—Stephens on Pleading, 378. We see the consequence of this uncertainty. On the trial we were assailed by evidence or pretence that Mason engines (side bearing) could not be used without liability,

as they were unsafe; also, instructions to the jury were asked on the ground that the engine, admitting it to be a safe model, was not fully repaired; besides which the absolute duty was insisted on that the defendant was bound to have safe engines at all events. We thus see that the whole matter was confused before the jury, owing to the looseness of allegation, against which we sought to guard by a demurrer, but we were overruled; and this flood of evidence was let in which misled the jury and confused the case. This, with the aid of the erroneous instructions of the court, presented the case to the jury so that no one can tell on what ground the recovery did in fact rest, and the court cannot now be certain that it was founded on a proper or sufficient ground.

The court, therefore, erred in overruling the demurrer to the complaint.

2. The complaint we also make is, that on the trial, evidence was before the court, owing to the uncertainty of the count, which, with the charges of the judge, did confuse the case and mislead the jury.

We insist that the sole ground on which we could properly be charged was by evidence establishing neligence in not being informed that the engine was defective at the time of the accident, and that we had not used proper and sufficient diligence in order to be informed of such defect. This is by a proper construction of the court, the matter of issue which we had to meet, and nothing more. The plaintiff was bound to prove three things—1. That the engine was deficient at the time of the injury. 2. That this defect was the cause of the injury. 3. That there was neligence in the defendant in not having knowledge of this defect.

The case concedes that the road bed was in good order—that there was no improper management by the conductor of the engine causing it to run off—and it also admits that the defendant did not know, or have notice, that any defect existed in the vehicle, since it rests for liability on the want of proper care and diligence in not knowing of the defect.

44

Nothing is more clear than the rule that an admission in pleading is conclusive against the pleader, and that he cannot be allowed to make any proof which controverts what he has conceded in pleading.—Gould's Pleading, 176. This clear rule was disregarded in the whole case, and it was insisted that the jury should consider of evidence to establish notice to the defendant of deficiencies, against the parties' own admissions in the pleading.

This makes it evident that all the pretence of notice of the defect to the defendant must be excluded, and that all the instructions which attempted to fasten notice of the deficiency of the engine on them, either directly or constructively through their servants, were erroneous and misled the jury. This matter of notice was made to play a very important part in their consideration.

The case proved on the trial, made formidable by the confusion and instructions of the court, was, in fact, when stripped of mere make weights, a very slim one.

First, the attempt was made to prove that the Mason engines (probably the best in the country) were unsafe from their construction.

Secondly, a defect was sought to be shown to have existed in the engine No. 69.

Third, a charge was asked founded on the ground, admitting the construction of the engine to be proper, that the repair was imperfect.

As to the first proposition, we insist that the declaration is, by its construction, (most favorable to us as the law requires), to be confined to the charge of being *out of order*, and therefore unsafe; and therefore, as the duty of guaranty cannot be insisted on, the plaintiff must be confined to the ground of its being out of order or repair merely, which the court did not require by its instructions.

Secondly. The defendants did prove that the engine was fully repaired at the time of the accident, though this was not necessary for them to do. It was the duty of the plaintiff to prove the defect and show what it was. How did he do this? And here we deny the proposition charged, that it was the duty of the defendant to prove that any defect was remedied. It was the plaintiff's duty

to prove a defect existing at the time of disaster. The burthen of proof was on him.

The evidence showed that the engine ran off the track. But this naked fact does not of itself charge the defendant· The proof was that this happens sometimes without any perceivable cause or default. It is one of the accidents attending that business, and the employees are subject to it as a mariner is to shipwreck. It is, therefore, necessary to go further than to prove the mere fact of running off of the track, particularly to charge the defendant, by relation or operation of law, as liable for the acts of others.

The running off may occur from various causes : 1, defect of track ; 2, carelessness or want of skill of engineer ; 3, criminal intent of engineer ; 4, accident without default or want of care, say a pebble, fallen limb, rain washing earth on a slope over the rail, the breaking of a concealed bolt, or other cause which the usual precautions cannot guard against ; 5, defect of engine. Our case rests on this last ground solely. The plaintiff must, therefore, point out and prove the particular defect he relies on—must show its existence, as above stated, at the time of the occurrence, and establish that the running off was from that cause. The connection of the accident with the defect is necessary before any defense is called for.

What is the proof on this point? It appears that the engine was long used successfully by the company without accident ; that during the war it was worn out, and by reason thereof, and for want of proper springs, the side supports jumped out of their mortices, which prevented the truck from turning ; that for this cause it was laid aside and not used ; that after the war it was fully repaired, put in complete order, fully tried and tested by careful and competent men, and pronounced complete and safe.

It must be noticed, that there was no proof that there was any jumping out of the mortices at the time of the occurrence ; all the proof of what happened in this respect, while it was out of repair, and not used for that reason, was wholly irrelevant and tended only to prejudice. The issue

did not embrace the inquiry of what the condition of the engine was when it was not in use or during the war. The proof of repairs complete was made, and there was no proof that the repairs were insufficient or not complete, yet a charge was given, predicated on that assumption.—(2d charge asked for by the plaintiff.) There was, indeed, no evidence whatever of insufficiency of the track in respect to its not being in good order of repair on the day of the occurrence.

It was not proved what caused the running off at the time. There was but one witness examined who saw it, and he stated expressly, when asked the question, that he did not know what caused it. From the evidence of this witness it was left to inference what the cause was, and it cannot escape criticism, that this witness observed that which it does not appear that any one else did. He says he told the engineer what he had observed, but he did not tell any one else, and the plaintiff took good care to prove that he did not tell him. The engineer not being in life at the time of the trial, any witness could safely make such a statement without fear or possibility of contradiction. The whole case evidently turned on this, and still this very witness could point out no defect in the engine, although he was an engineer; he said expressly that he did not know what caused it to bind. That it should bind on one side in going round a curve must be true, for it always does so bind on one side to make the curve, particularly on a down grade. So far as we can have the evidence of the engineer who is dead, he contradicted the evidence of this witness by his acts, as he stopped at Citronelle after this information, and went on disregarding it, although he probably had the best opportunity of knowing the truth; his own life was at stake; therefore, we say he did not believe a word of what this witness says he observed, whether he really was told so or not. What evidence was there other than this to the point? What defect in the engine did it prove to be existing at the time, and how far did this prove that the running off was caused by a defect, and what defect?

Nothing remains in the proof bearing really on the issue, except that a Mason engine is not, from its construction, fit

to be used.   This, to us, was a double surprise; first, because
as we have shown, it was not to be considered as averred in
the declaration, which, under the proper rule, must be con-
strued most strongly against the pleader; and secondly, be-
cause we could not suppose any witness could be found to
say so.   True, engineers know the contrary, and we sup-
plied at once the contrary proof by the experienced engi-
neers present; still this evidence was, by the general confu-
sion of the proof and instructions of the court, with the
irrelevant evidence of the condition of the engine at a for-
mer time, made to tell against the defendant.

We now again ask the question, on what ground does it
appear that the judgment was authorized, and wherein does
it appear that the defendant was chargeable with want of
care.   Where is the defendant to get its information as to
where the engine is sufficient and where not, if it be not
from experienced workmen who report it safe, after full re-
pair and trial.   What proof did the plaintiff produce of any
negligence of the defendant ?

Another point arises in this case, where want of care is
spoken of.   Suppose it be believed by all that the engine
is perfect when it starts, what more can be required when
the defendant is not a guarantor of its perfection.   Then
suppose that on the first trip a defect is discovered on the
way.   Then suppose the engineer in charge believes the
engine still sufficient, and he proceeds to reach the end of
his route, and the accident occurs before the company or
its general superintendent can obtain any knowledge of
what is discovered, or be called on to provide a remedy.
Can negligence in such case, or want of care, be asserted
and maintained against the principal ?   This would be to
require impossibilities and make them guarantors.   The
case before us involves these circumstances, and the de-
fendant was really made a guarantor that the engine would
not run off of the track.

The court instructed the jury that they might take into
consideration the pain and sufferings of the plaintiff in
estimating the damages, but gave the jury no rule to go by,
and put no limitation on their authority in this respect.
The consequence was, a very large verdict, probably more

than five times the amount of such pecuniary damages, as computation would arrive at. The law does not deal in wild, arbitrary, unlimited or speculative damages, and does not undertake to renumerate for all kinds of losses or injuries, nor allow such as the feelings may embrace in their scope. The idea of legal damages, in general, means something more tangible, which can be admeasured by some sort of rule, and which can be awarded with some kind of uniformity. The pride of the common law is, that it finds a rule for everything, and leaves nothing to caprice or uncertainty. The term legal damages has, as it is said in the books, a meaning much restricted. There are decisions and dicta to be found that sufferings and pain are to be estimated; but this is not in accordance with legal principles, and the law is not settled satisfactorily on that point. The difficulty has been felt of the want of a rule. It is said there is no rule—5 Wallace, U. S., 105—and yet where the court told the jury that there was no rule, the evil effect of this was seen, and the Supreme Court of Pennsylvania said that such instruction was wrong.—*Heil vs. Glanding*, 42 Penn. 493.

No money can be a compensation for pain and suffering. The ordinary means of parties would be insufficient for this; which, together with impossibility to admeasure renumeration with uniformity, must cause the effort to be abandoned. The human race is subject to suffering daily, without hope or possibility of remuneration, and, consequently, such sufferings must be placed to the account of human misfortune, as said by Mr. Justice Pollock in 26 English Law and Equity Reports, page 438.

In the present case, when we applied to the court to set aside the verdict, the answer was, that we could point to no rule to guide the court in respect to the amount, wherefore it could not interfere with it. Thus we have no means of revision or redress. If there be no rule, it is high time there was one.

In the recent statutes giving actions for damages where death is caused, we see the damages allowed generally have a limitation of amount, or are confined to pecuniary consideration. In our statute, the limit was three years in-

come, or $3,000. This, however, has been repealed, perhaps unwisely.

There is a clear demarkation in the decisions. Vindictive damages are given in cases of injuries, where there is fraud, malice or intentional wrong and evil; but this rule never can apply to cases like this of liability by relation or operation of law.—13 Howard, U. S., 371.

The rule that pain and suffering can be estimated as a ground of damage has gained ground, but it will always be a cause of embarrassment; and not being in conformity with the sound principles of the common law, will necessarily be abandoned, as the evils of it in practice will be multiplied; and in cases where there is no intent of wrong, will produce verdicts oppressive, without means of redress.

Pecuniary damages—those which the law can ad judge with some kind of certainty and uniformity—are proper for courts to allow. In the present case, for instance, a brakesman earns, say $40 per month, at the present high rates of wages; allow in deduction for lost time, sickness, want of place, &c., say $400 per annum; compute the loss of an arm as an incapacity for employment equal to half this value, $200 per annum. Then a sum which would purchase an annuity of $200 during life, would be a measure of damages according to the rule. This could be purchased, probably for $3,000; but here the verdict is for more than five times this sum. Such a rule as this, however, was rejected in *Rapson vs. Cubitt*, 41 Com. Law Rep., p. 41, as being speculative.

It is time, we say, that this subject be seriously considered. These large verdicts are becoming common, given recklessly, often from local jealousy and passion, without care or responsibility, injuriously affecting railroads, operating to impair their usefulness so as to affect the interests of the whole community, and thus creating a serious evil. The Supreme Court of Illinois so considered it, and in *R. R. Co. vs. Parks*, 18 Illinois, 460, we find that a judgment in a case of tort, wherein $1,000 had been given by the verdict, was reversed on error on the sole ground that the damages were excessive. They considered it their duty

to protect parties against the abberration of juries. Other courts have exercised the same power on error.

If the rule of damages was confined to those of a pecuniary character, at least in cases where there is no pretence of wilful wrong, we think public policy would be better subserved, and the principles of the common law maintained.

Argument of ROBERT H. SMITH, for appellee.—The declaration in this case is drawn on the authority of *Noyes vs. Smith*, 28 Vermont, (2 Williams') 59, and is good.—See 26 Barb. S. C. 39.

Before considering the charges given and refused, it is proper to consider the case as presented by proof. This is necessary in order that we may correctly understand the meaning of these charges.

There was evidence tending to prove :

1. That the injury to appellee resulted from an engine not only of unsafe construction or pattern, but that it had a specific defect from which the injury resulted.

2. That these defects were discovered by appellant's employees, engineers and others, many years before the injury.

3. That specific evidences of the defects had, many years before the wrong, been exhibited by actual occurrences, such as running off the track, breaking down and smashing up of the engine.

4. That the engine had for a long time been thrown aside by the company as unfit for use.

5. That appellee only entered appellant's employment (and as fireman) on the day of the wrong ; that he was ignorant of any of the facts connected with the history of the engine ; was ignorant of any defects in the engine, and believed it to be good and safe.

6. That by appellant's rules, a report of all accidents occurring on the road are ordered to be made in writing, with all particulars of such occurrence, and a record is kept by the company, though it was not shown that any such reports had been made of this engine, (nor is it shown that such reports of this engine were not made.) As before

said, the company had thrown the engine aside for some time as unfit for use, and this took place just after it had run off the track. Whether it was laid aside because of these reports having been made, or of appellant's having otherwise acquired knowledge of the defect, is not shown, except as might be inferred from taking the foregoing facts together.

7. That the *assistant general superintendent and master mechanics and foreman of the shop*, were informed of the various disasters occurring from the defects of the engine at the time they took place.

8. That after the wrongs to appellee, the model of the engine was radically changed and the defect remedied.

9. That in repairing the engine, just before the injury to appellee, its model was not changed, nor was any particular attention paid to the special defect.

Appellant gave evidence which, in some respects, conflicted with the foregoing, but that is immaterial. The jury have solved which way the truth was, and there was evidence tending as above.

The foregoing survey is made to show that by the four charges asked, appellant skillfully sought to exclude from the jury the consideration of the foregoing evidence, as effectually as if it had been ruled out on motion. If so, of course for that cause alone they should have been refused, even though correct as abstract propositions of law ; and the charges are open to the further objection that the plaintiff sought to require knowledge of the defect to be brought home "to the defendants themselves—that is to say, to the president, directors, or general superintendent of their working operations."

Appellant sought, by its charge first asked, to exclude from the jury the fact of notice having been given to the *assistant general superintendent engineer,* who, by its own evidence, was one of *its officers,* and who, as shown by the evidence, did have notice. In other words, there was evidence of positive notice of the defects " to the *assistant general superintendent.*"

Appellant proved *that he was one of itself*, one of its officers, and yet asked the court to assume (contrary to

its own proof) that appellants consisted only of " a president, directors and general superintendent of their working operations," thus artfully seeking to exclude from the jury the facts of actual notice to this " assistant general superintendent," and further seeking to exclude the effect of evidence of notice to other agents, though they might be authorized to receive such notice, and though appellants failed to introduce any proof tending to show that such agents, who received notice, failed to communicate it to appellants, as they defined themselves in the charge asked.

Appellant having obtained from the court the erroneous charge, contrary to the evidence, that it consisted of its " president, directors and general superintendent of its working operations," proceeds to request charges, ingeniously repeating the idea, which the court, by its qualification to the former charge asked, had refused : that appellant can only be charged on the ground of *its own* negligence or want of diligence, meaning to exclude liability unless negligence was the result of want of personal diligence of the president, directors or general superintendent, without regard to the negligence or want of diligence of any other agent, and without regard to the powers or duties of such other agent; and the second charge asked by appellant embodied the proposition that such was the issue.

The third charge asked by appellant asserts :

1st. Abstractly, that the machinist and master mechanic, and not appellant, "*put the engine on the road.*"

2d. If the fault was in the master mechanic or his assistant workmen, the appellant is not liable, if there be no negligence of their *own*, meaning the president, directors and general superintendent.

These three charges asked were all repetitions of the idea set forth by fuller expression in the first charge asked by appellant. They aimed to confine the jury, absolutely, to the consideration, first, of negligence, secondly, to the consideration of negligence of themselves, as *defined by themselves*, and to destroy the effect of the qualification given by the court to the first charge asked by appellant, respecting

its liability for the acts of its agents within the scope of their delegated powers.

The fourth charge asked by appellant calls on the court to exculpate the company, if it placed the engine in the shop for repairs, and if the workmen were competent, skillful and careful men, who made trial of the engine and reported her to appellant as safe and fit for running with safety and security, and if the injury occurred by reason of defectiveness of the engine from the *neglect* of the mechanics, meaning, of course, not *bad work*, but *neglect* to do something that was required to be done—neglect or omission to repair the prior existing defects, of which the evidence speaks.

This, and all the other charges of appellant assert, in effect, that the jury should find for appellant upon certain stated facts, notwithstanding they should believe that the engine was of an unsafe kind; notwithstanding it had a radical specific defect; notwithstanding appellant itself, as defined by itself, had every reason to know of the defect, and, in fact, knew of such defect; notwithstanding its assistant general superintendent knew of the defect; notwithstanding it was known to agents authorized to receive such notice for the company, and which stated facts exclude all consideration of the foregoing matters; and notwithstanding appellant failed to call the attention of its workmen to the known defect.

Suppose the third charge asked by appellant had been given, would it not, with intendments supplied, have run thus: "I have, at the request of appellant, told you, gentlemen of the jury, that the defendants, themselves, are the 'president, directors and general superintendent of their working operations,' and I now tell you, that if the fault be in the master mechanic or his assistant workmen, the defendant cannot be charged if there be no negligence of its own—that is, of the president, directors and general superintendent; though such master mechanic was the proper agent of the company to receive notice of the defect, and though he and other proper agents of the company had notice of the defect, and though it was not remedied."

Appellant says that appellee must make out the affirmation of his allegations; one of which allegations is, that appellant was ignorant that an improper machine was used. He assumes that there is, therefore, an *onus* on appellee to show that appellant was ignorant of the defect. The allegation in the declaration on which this objection rests, is, that "the engine was out of order and unsafe, and unfit to be used in said business, and which, but for the want of proper care and diligence, would have been known to defendant."

Appellant distinctly embodied this idea in his third charge asked, and, in effect, in the several charges asked by him.

The proposition is, that the following matter, if put in the form of plea, would be good :

" It is true defendant was guilty of all wrongs and omissions complained of, except it is not true that he was ignorant of the defect in the engine; on the contrary, he knew of the defect and wilfully disregarded it, and, thereupon, he calls on the court to pronounce for him !"

The proposition is, that he not only should have known of the defect, but did know it. If his knowledge had been alledged and proven, it would have aggravated his offense; not being alleged, but being proven, it acquits him ! The allegation of the declaration, in effect, is, that he had reason to know of the defect, and by proper care and diligence would have known it. The proof shows he not only ought to have known it, but did know it. Appellant says this acquits him ; that we have said he did not know it, and he did know it ! Appellee says the proof more than establishes the allegation. Besides, the mode of raising the question should have been by objection to the introduction of evidence tending to prove knowledge ; and appellant having admitted the evidence without objection, and not having moved to exclude it as injurious to him, cannot, by a charge, not only disarm it of injury to him, but make it work his acquittal.

II. The charge given by the court and excepted to, and the charges given at the request of appellee, are correct, and those asked by appellant were properly

Mobile & Ohio R. R. Co. v. Westley Thomas.

refused, and this irrespective of the objections before urged.

The propositions of appellant are, that a corporation, acting over a vast field, through various agents, with powers and duties commensurate with their agencies, can only be charged on the personal neglect and personal knowledge of the president and directors, or of its general agent; that the corporation may so commit its matters to various agents that it will have no personal knowledge of what transpires in any department, and thus acquit itself of every liability to its employees for the acts or neglects of these agents. If appellant's proposition did not mean to assert this, but meant to admit that knowledge to the corporation's agents was knowledge to it, then the language used was inappropriate to convey the idea and the charges asked, but asserted in this respect what had before been given to the jury in much clearer language.

The first charge asked by appellant related to the liability of the company for failing to have the defects in the engine repaired. This appears by reference to the evidence set out. The appellant evidently sought to defend itself by insisting on want of knowledge or notice in the president, directors or general superintendent, and the court having immediately before charged on the point as to notice, and having told the jury, in effect, that notice to the company's agent was notice to it, the request comes seeking to confine the notice to appellant as *defined by it* in this charge. It is but the antithesis of the charge preceding it. If that given was right, this asked was wrong. That the charge given was right, is too clear for argument.

The second charge asked by appellant has before been sufficiently commented on, and the third and fourth charges asked, which have also been commented on, will be further embraced by the propositions which follow, as will the charges given by the court.

*As to the law of liability of the master for injuries sustained by servants in the course of his employment.*

The doctrine of England, New York, South Carolina and Massachusetts, for which appellant contends, is not the law of Scotland, but by its wiser and more humane doctrine,

the master is liable to an employee for injuries received in
his service by the neglect of another employee.—See *Dixon
v. Rankin*, 1 American Railway Cases, p. 569 to 571. Nor
is it the law of Ohio, of Kentucky, or of Alabama, or of
Georgia.—*Little Miami Railroad v. Stevens*, 20 Ohio, 415;
*Scudder v. Woodbridge*, 1 Kelly, (Geo.) 195, though this case
is put on special grounds; 5 Law Register, N. S., p. 265,
in which the Kentucky case, in accord with 20 Ohio, is re-
ported; and see approving comments of Judge Redfield in
a note; see last Ed. of Redfield on Railroads, p. 520, § 131,
&c.; *Noyes v. Smith*, 28 Vermont, 59; see reservation in
the latter part of the opinion of Shaw, C. J., in *Farnwell v.
Boston and Worcester Railroad*, 4 Met. 36; Redfield on
Railroads, Ed. in Sup. Ct. Library, sec. 3, p. 386 to 390,
and notes, pages 389 and 390; *Perry v. Marsh*, 25 Ala.
659; *Cook v. Parham*, 24 Ala. 21; *Walker v. Bolling*, 22
Ala. 294; Revised Code of Ala., p. 474, § 2300.

This act of the legislature expressly creates a liability on
a chartered company for death caused by the wrougful act,
omission or culpable negligence of any officer or agent of
the company. This portion of the act was entirely unneces-
sary to establish a liability for the wrong to any one but
its employees. The common law certainly established such
liability, though by the death the remedy died. The act
extended the liability to the death of all persons, and then
made the remedy survive. It can not be supposed that
the legislature thought one rule of liabilty should exist
when death ensues, and a different one when the party is
mangled and disabled but does not die. The legislation
must be taken as a strong expression of intention to adopt
into our jurisprudence the Scotch rule, before approached
in *Perry v. Marsh*, and other cases, *supra*.

Appellant attempts to predicate error on the assertion of
the proposition by the court in the charges given, that it
was the duty of appellants to have suitable and proper en-
gines, and to keep them in such condition that unusual risk
would not attend those who were employed to perform ser-
vice on them; and if it did not in this case have such an
engine, and the plaintiff was ignorant of any defect in it,

the burden is on the defendant (appellant) to show that it used due caution and diligence in the matter.

The appellant's proposition is, that it is not the duty of appellant to have such suitable and proper engines; that his duty is to employ proper agents to provide such, and then he is absolved from all further duty in the matter.

Appellee's proposition is, that it is the duty of appellant to have such engines, and if he fails in performing it, he may excuse himself from liability by showing that he used all proper care in the performance of the duty, and that he was without fault or neglect. His proposition is, that when he makes out a case of failure to have suitable and safe engines, it devolves on appellant to show that he used proper diligence.—*Buzzell v. Laconia Manufacturing Co.*, 48 Maine, 113; *Keegan v. Western R. R.*, 4 Selden, 175; *Noyes v. Smith*, 2 Williams, (28 Vermont,) 59; *Farwell v. Boston and Worcester R. R.*, 4 Met. 60, 61; *Marshall v. Stewart*, 33 Eng. Law and Eq., p. 1; *Byron v. N. Y. Printing Tel. Co.*, 26 Barb. S. C. 39; 4 Ohio State, 575; 25 Ala. 659; 24 Ala. 21; 22 Ala. 297; see 35 Barb. S. C. 198, as to the inference to be drawn from the engines running off.

It is manifest throughout the record that the leading proposition pervading the case was, was appellant liable for the neglects and wrongs of its servants—that is, did they represent it in the matter? For appellant it was contended that notice of the defective machinery to the assistant general engineer and head mechanics, and neglect of the latter in not remedying the defects, was not notice to and neglect by the corporation. That the corporation was liable only on knowledge or notice of the defects to the president, directors and chief engineer; that these, and these only, represented the corporation. This appellant assumes as a matter of law, irrespective of the facts proven as to agencies. Hence, the question of notice became the most prominent one in the cause, and appellant framed his charges so as to confine his liability for acts done and notice had, to the president, directors and general superintendent, excluding all others from being its agents, for whose acts or omissions it could be held liable.

The duty required of railways towards those who are at the time in the exercise of their legal rights, is the possession of the most approved machinery, and such care, diligence and skill in using it, as skillful, prudent and discreet persons would be expected to put forth. A master is bound to provide for the safety of his servants in his employment to the best of his judgment, information and belief.—*Keegan v. Western R. R. Co.*, 4 Selden, 175 ; *Columbus R. R. Co. v. Webb*, 12 Ohio, (N. S.) 475 ; *Little Miami R. R. Co. v. Stevens*, 20 Ohio, 432 ; *C. C. and Cincinnati R. R. v. Keary*, 3 Ohio S. R. 201.

The only mode in which a corporation can act is through the intervention of agents, and it is liable for the neglects and omissions of duty of its servants and agents on the same grounds, in the same manner, and to the same extent as natural persons.—Angell & Ames on Corporations, sections 276, 310, 311, 382 ; Story on Agency, sections, 308, 452, 453.

A railroad company acts through its officers, and their carelessness is the carelessness of the company.—*Frazier v. The Pennsylvania R. R. Co.*, 38 Penn. State R. 104.

The power to employ servants, and to select the agencies and instruments upon which the servants are to be employed, being delegated by the corporation, and the corporation, thus acting by an agent, will be liable for the negligence of the agent. Such agent will not be regarded simply as a fellow-servant of those who are employed in the general business.—*Wright v. N. Y. Central R. R. Co.*, 28 Barb. (N. Y.) 80.

A "managing agent" or superintendent of a railroad company is to be regarded as the agent of the company, and not the fellow-servant of the men employed on the road, and the company is liable for the negligence of such agent.—28 Barb. (N. Y.) 80 ; 22 Ala. 294, (Judge Phelan's opinion.)

It is no defense that the defendant employed proper servants, if they did not accomplish what they should have accomplished.—*Brehm v. Great Western Rilway Co.*, 34 Barb. (N. Y.) 256.

The cases cited by appellant, relating to injuries to one servant by the negligence of another, go no further than to deny that the principal is liable to one servant for an injury sustained by the *mere negligence of another*, while both are engaged in the same service, the principal *not being in fault*. All of them concede that the principal would be liable if he was in fault, as well as the servant.—4 Metcalf, 49, 62.

The employer is liable to one servant for injuries caused by the carelessness of another. The servant assumes the risks necessarily incident to the employment, but the employer must see to it that all his servants are careful and vigilant. It is immaterial whether the negligent person was a co-servant of the injured person, or a servant in another department, or a superintendent.—*Chamberlain v. Milwaukie R. R.*, 11 Wis. 238.

As to the question of damages, see Redfield on Railways, p. 337, note 3, and 345; 10 Barb. (N. Y.) 623; 1 Cushing R. 451. The charge on this subject is in harmony with these authorities.

A. J. WALKER, C. J.—The first ground of demurrer amounts to nothing more than a general demurrer, and there could be no error in overruling it.—*Robbins v. Mendenhall*, 35 Ala. 722; *Helvenstein v. Higgason*, ib. 259; *Burns v. Mayor of Mobile*, 34 Ala. 485.

The complaint is not obnoxious to the objection for uncertainty made by the second and seventh assignments of demurrer. It was not incumbent upon the plaintiff to specify the place where the injury alleged was sustained, and, therefore, the third assignment of demurrer was not well taken.

The sixth assignment of demurrer is as follows: "It appears that plaintiff was an employee of the company, and the matters alleged do not make such a case as will charge defendant." The specified fault imputed by the complaint in this assignment, is, that the plaintiff was an employee of the company. Forbearing verbal criticism, we understand the objection to raise the question, whether the condition of employee of the defendant corporation, at the time of the alleged injury averred by the plaintiff, is a legal reason

why liability should not result from the cause alleged in the complaint. The cause, from which the defendant's liability is attempted to be deduced in the complaint, is that the plaintiff was injured by an engine's running off the track of defendant's road, and that the engine ran off the track, and the injury was suffered "because of the wrong and gross negligence of defendant in running on said road such engine, which was out of order and unsafe, and unfit to be in said business, and which, but for the want of proper care and diligence, would have been known to defendant, and all of which was unknown to plaintiff." The injury is, in this allegation, attributed to the gross negligence of the defendant in running an engine out of order, unsafe, and unfit, and it is averred that the condition and character of the engine were unknown to the plaintiff, and would have been known to the defendant but for the want of proper care and diligence. There can be no doubt that a railroad company is responsible for injuries to their servants resulting from *its negligence.* If the defendant was negligent in putting the engine upon the track, and if, in addition thereto, it would, but for the want of proper care and diligence, have known the deficiency of the engine, they are liable.— *Williams v. Taylor,* 4 Porter, 234 ; *Walker v. Bolling,* 22 Ala. 294 ; *Cook & Scott v. Parham,* 24 Ala. 21 ; *Perry v. Marsh,* 25 Ala. 659. The case of *Williams v. Taylor, supra,* lays down a rule which would make the defendant liable only where the negligence was gross. The two later cases of *Walker v. Bolling,* and *Cook & Scott v. Parham,* exact, for the absolution of the master from liability, only ordinary diligence. The latter rule is the true one. The courts are now inclined to abandon the distinction between negligence, or want of reasonable care and diligence, and gross negligence, as too fine for practical application.—2 Redfield on Railways, 201, § 211. The complaint seems to have been framed to meet the more stringent rule. The complaint was not obnoxious to any of the objections made in the assignments of grounds of demurrer. See *Noyes v. Smith,* 28 Vermont, 59 ; *Buzzell v. Laconia Manufacturing Co.,* 48 Maine, 113 ; *Bryon v. N. Y. S. P. T. Co.,* 26, Barbour, 39.

The court gave, at the request of the plaintiff, nine several charges, and gave one charge besides, and imposed a qualification upon a charge given upon the defendant's request, and refused three charges requested by the defendant, which are numbered two, three and four. These fourteen rulings we proceed to consider separately in the order in which they are named above.

1. The first charge given was as follows : "It was the duty of the defendant to have on the road suitable and proper engines, and to keep them in such condition, that unusual risks would not attend those who were employed to perform service on them ; and if they did not in this case have such an engine, and the plaintiff was ignorant of any defect in the engine, the burden is on the defendant to show that they used due caution and diligence in the matter."

The defendant was liable to its servants for injuries resulting from its negligence. When passengers on a railroad are injured in consequence of a defect in any instrument employed by it, it is a presumption, disputable but not conclusive, that the injury resulted from negligence. 2 Redfield on Railways, 190, § 11; *Hand S. R. R. Co. v. Higgins*, 5 Am. Law Reg. 715 ; *S. C.*, Redfield on Railways, 533, § 131 ; *S. C.*, 36 Mo. 418 ; *Edgerton v. N. Y. & H. R. Co.*, 35 Barb. 193 ; *Curtis v. R. & S. R. Co.*, 18 N. Y. 534.

But the same principle does not prevail in reference to servants of a railroad, as we shall see. The established doctrine of the law unquestionably is, that the *onus* of proving negligence is upon the injured servant.—2 Redfield on Railways, 200, § 15 ; *Perkins v. E. R. Co. & B. M. R. Co.*, 29 Maine, 307 ; *S. C.*, 1 Am. Railway Cases, 144.

Our own decisions in *M. & O. R. Co. v. Jarboe*, mss., (1 Div., 30th April, 1868,) and *Steel & Burgess v. Townsend*, 37 Ala. 247, are not opposed to that proposition. In those cases the question was, whether a loss of goods, or injury to them, was within an exception to a contract of affreightment ; and it was held that the *onus* of proving that the loss or injury came within the exception was upon the common carrier ; that it did not fall within the exception, unless due care and diligence had been used, and that therefore

the *onus* of proving such care and diligence was upon the carrier.

The charge here, however, was not that the *onus* of proof of care and diligence was upon the defendant, but that it was *cast* upon it by a failure to have a suitable and proper engine. It bases the proposition that the *onus* of proof is shifted to the defendant upon the assumption of its *absolute* duty to have a suitable and proper engine, as contradistingushed from its duty to use due and proper care and diligence to have such engine. Does the law impose upon a railroad corporation such absolute duty to its servants, or does it only impose the duty of using due diligence to have a suitable and proper engine? If the former question be answered in the affirmative, then the defendant guarantees absolutely to its servants the proper quality of all its engines, and it is liable, notwithstanding the utmost care and diligence is used. We can perceive no reason to support the conclusion, that the badness of the engine could create the presumption of negligence, and have the effect of shifting the *onus* of proof from the servant to the carrier. If the assumption that it was the absolute duty of the defendant to have a suitable and proper engine be correct, then the court has made an unmerited concession to the defendant in only deducing the inference that the *onus* of proof was changed. Upon that assumption he should have drawn the inference of an unqualified liability, and in that view the charge would be too favorable to the defendant, and he would not object to it.

Error, therefore, in the charge is shown, and shown only by maintaining the proposition that the defendant's obligation or duty to its servants was discharged by the exercise of due and proper diligence to have and keep suitable and proper engines. To impose upon the master a liability for injuries to the servant resulting from causes, against which due care and diligence fail to provide, absolves the servant from the risks necessarily incident to the business in which he is engaged. There are perils incident to the servant's employment against which caution and prudence can not perfectly guard. Those perils and risks the servant must be presumed to know as well as the master, and when he

contracts, he must be understood to assume them and stipulate for a compensation apportioned thereto. It is in this that the relation of a railroad corporation to passengers differs from its relation to servants. The principle has been so often declared both in England and in this country, that it has ceased to be disputable.—*Priestley v. Fowler*, 3 M. & W. 1. The leading case upon the subject is in reference to the liability of a master to his servant for an injury received during his transportation upon the master's wagon. Lord Abinger, in deciding the case, omitting a qualification which seems to have been since engrafted upon the rule, said : " No duty can be implied upon the part of the master to cause the servant to be safely and securely carried, or to make the master liable for damage to the servant, arising from any vice or imperfection, unknown to the master in the carriage or in the mode of loading and conducting it." The later English cases of *Seymour v. Maddox*, 5 English Law & Eq. 265, and *Cough v. Steel*, 24 ib., are to the same effect. In the latter of those cases it was decided that the owner of a ship was under no obligation to a seaman serving on board for the seaworthiness of the vessel, and was not liable to the seaman in the absence of any knowledge of the defect or personal blame of the master. *Marshall v. Stewart*, 33 English Law & Eq. 1, distinctly recognises neglect as the ground. In the recent case of *Wiggett v. Fox*, 36 English Law & Eq. 486, we infer, that the doctrine in *Priestley v. Fowler, supra*, as above stated, was recognized.

In America, the earliest case touching the subject is *Munday v. R. Co.*, 1 McMullen, 386, where the liability of a railroad corporation to a servant for an injury received when on its cars was denied, unless there was fault in the master. In *Farwell v. R. & W. R. Corporation*, 2 Metcalf, 49, which is the leading American case in reference to the relation of railroads to their servants, the precise question of the liability of a railroad to its servant for an injury arising from a defective locomotive, did not arise, and Chief Justice Shaw, who delivered the opinion, withheld any expression upon the subject. In the later Massachusetts case of *Seaver v. Bond M. R.*, 14 Gray, 466, the question arose,

and was decided in a *per curiam* by a court over which the same learned judge presided. The court below had ruled, that a railroad was not responsible for an injury to a servant, resulting from a defect in a locomotive, unless there was a want of due and reasonable care to provide a safe and suitable engine. The appellate court affirmed, remarking, that the instructions to the jury were sufficiently favorable to the plaintiff.—Redfield on Railways, 530, § 10. This case arrays the authority of the highest court of Massachusetts, including the great name of Chief Justice Shaw, in favor of the proposition that the railroad is not liable in such case, unless there was a want of reasonable care.

In *Buzzell v. Laconia Manufacturing Co.*, 48 Maine, 113, it was ruled (a servant having been injured in consequence of a defective bridge,) that the master's liability depended upon negligence and want of care, and the declaration was held defective for lack of an averment that the insufficiency of the bridge was known to the defendant, or would have been known but for the want of proper care and diligence. In *Noyes v. Smith & Lee*, 28 Vermont, 59, there was an injury to an engineer resulting from defect in an engine. It was decided that there does not arise from the relation of master and servant the duty of furnishing an engine, well constructed and safe to the engineer, and that when there was no actual notice of defects in an engine, and no personal blame exists on the part of the master, there is no implied obligation on his part that the engine is free from defect, or that it can safely be used by the servant. See, also, to the same effect, *Hard v. V. & C. R. Co.*, 32 Vermont, 473. In *Keegan v. W. R. Corporation*, 4 Selden, 175, the liability for injury to a servant caused by a fault in an engine was placed upon the established fact of negligence and misfeasance, and the distinction herein before stated between passengers and servants is declared. There are a number of other decisions in New York to the same effect. *Wright v. N. Y. C. R. Co.*, 25 N. Y. 562, reviewing the decision of the supreme court, reported in 28 Barbour, 80, refers the master's liability to his misconduct or negligence, and in relation to defects of machinery, says, knowledge must be brought home to the master, and proof given that

he was ignorant of the same through his own negligence and want of proper care; in other words, it must be shown that he either knew or ought to have known the defect which caused the injury.—See, also, *Bryon v. N. Y. Lt. P. S. Co.*, 26 Barb. 39. In Ohio, the rule is that the master is liable, on the ground of neglect or want of care and diligence.—*McGastrick v. Wason*, 4 Ohio St. 566, 575. In Pennsylvania, the proposition that there is a duty or implied warranty of the master to the servant of the suitableness and safety of the instruments furnished, is denied.—*Ryan v. C. V. R.*, 23 Penn. 384. And lastly, this court itself has decided the question in hand; in *Perry v. Marsh*, 25 Ala. 659, it announced its opinion as follows: " In ordinary cases, where a workman is employed to do a dangerous job, or to work in a service of peril, if the danger belongs to the work he undertakes, or the service in which he engages, he will be held to all the risks which belong either to the one or the other; but where there is no danger in the work or service by itself, and the peril grows out of extrinsic causes, or circumstances, which can not be discovered by the use of ordinary precaution and prudence, the employer would be answerable precisely as a third person, if the injury or loss was occasioned by his neglect or want of care." The perils of service are in this extract divided into two classes, for one of which the master is not responsible at all, while for the other class in which the peril from a defective engine may be reckoned, he is responsible in the absence of ordinary precaution and prudence. This decision is also supported by the statement of the law in the older case of *Walker v. Bolling*, 22 Ala. 294.

We attain the following conclusions, from the foregoing collation of authorities: It is not an absolute duty of a railroad to furnish a suitable and safe engine. It is its duty to use due care and diligence to furnish such engine. When an injury has occurred to a servant in consequence of a defect in an engine, the burden is upon the plaintiff to show negligence, or the want of care and diligence in the defendant corporation. The *onus* of proof is not shifted to the defendant, by the fact that an injury has resulted

from the defect. The first charge being inconsistent with these propositions, is erroneous.

The proposition of the second charge is, that if the plaintiff's injury was caused by a defect in the engine, not known to him, of which defendant's servants charged with the duty of receiving notice of such defects, and remedying the same previously, had notice, and if such servants being so notified had previously repaired the engine, but failed to remedy the particular defect above stated, the defendant would be liable. This charge is obviously correct in assuming that notice to the servants, who were agents of the defendant to receive notice of defects in the engine, would affect it with notice. If it designated one or more servants to receive such notice for itself upon an established principle of law, notice within the scope of the agency to the agent would be equivalent to notice to the principal.— *Smith v. Oliver*, 31 Ala. 39 ; *Wiley, Banks & Co. v. Knight*, 27 Ala. 336 ; *Mundine v. Pitts*, 14 Ala. 84. The propriety of this portion of the charge is also questioned in reference to the allegations of the complaint. It is contended, that under the complaint, the defendant can only be charged on account of a neglect, which consisted of a failure to remedy a defect which *it would have known, but for the want of proper care and diligence*, and not on account of negligence consisting in a failure to remedy a defect *of which it was legally informed.* This question we leave undecided, because we doubt in reference to it, and on another trial it can be easily avoided by adding another count to the complaint.

Another objection made to this charge, is, that it subjects the defendant to liability for a failure of its servants, who repaired the engine to remedy the defect. The inference of the defendant's liability from such failure of its servant can only be sustained by the maintenance of the two propositions, that negligence of the servant is a legal conclusion from such failure, and that the master is responsible for the negligence of the servant. If the failure to remedy the defect does not conclusively demonstrate negligence, the proposition of the charge is not correct. If it does demonstrate negligence, still, the proposition of the charge is erroneous, unless the master

is answerable for the servant's negligence which has caused an injury to another servant. We consider the charge incorrect in both respects.

An artisan charged with a duty of repairing within the scope of his handicraft, is not conclusively shown to have been negligent by a failure to remedy some defect specifically pointed out to him. He may have attempted to remedy it, and exhausted the skill and care of his art, and yet from some defect in material, or some other cause, beyond the detection of ordinary caution and care, may have failed to altogether cure the defect. The question of negligence in the mechanic, if material at all, was for the jury, upon the indeterminate fact presented by the hypothesis of the charge.

The question remains, whether, if the mechanic charged with repairing the engine was negligent in failing to remedy the defect, the defendant is liable for the injury alleged to have resulted therefrom to the plaintiff. This question will arise upon another trial, and must be decided. Is a railroad responsible to one of its servants, employed on a locomotive for an injury occasioned by the negligence of others employed in its machine shop?

This court has twice decided that, "when two persons are employed by a common employer in the same general business, and one of them is injured by the negligence of the other, the employer is not responsible therefor."— *Cook & Scott v. Parham*, 24 Ala. 21 ; *Walker v. Bolling*, 22 Ala. 294. Of this doctrine it is said in the former case, that "it is too well established, both upon English and American authority, to be now controverted." The English authorities, without exception, support this ruling, and Judge Redfield, in whose mind some difficulty as to its justice and policy was produced by the reasoning of a Scotch judge, withdraws serious objection to it if taken with the qualification prescribed in *Wiggett v. Fox*, 36 Eng. Law & Eq. 486; 1 Redfield on Railways, 525, § 5, No. 15. That qualification is, that the master is answerable that the servants shall be persons of ordinary skill and care. That qualification has been twice announced in this state. The precise shape of its statement is, that it is the master's

duty to use due care in procuring competent servants or officers, and he is responsible for a failure to discharge that duty.—*Cook v. Parham*, 24 Ala. 21; *Walker v. Bolling*, 22 Ala. 294. With this qualification the rule above stated, which prevails in England, must be regarded as established in this State. This rule is supported by all the English cases, and all the American, with a few exceptions.

Finding the question a *res adjudicata* in this court, and the rule thus supported by authority, we might here stop the discussion of the subject, but it will perhaps be more satisfactory to notice the meagre array of adverse authority. In Scotland, the rule is the opposite of that which prevails in England. That rule imposes upon the master a duty to his servant, not only of furnishing " good and sufficient machinery", but of having " all acts by others, whom he employs, done properly and carefully".—See *Dixon v. Ranken*, in the Court of Quarter Sessions, 1 American Railway Cases, 569. In point of authority, we must prefer the adjudications of the English to the Scotch courts, if their reasons were in equilibrium; but on account of the reasoning and principle, which underlie the English rule, we regard it as much more consonant with justice and public policy than the Scotch rule, which is built up upon the idea of a partial absolution of a servant from the risks incident, in the very nature of things, to his employment. In Ohio and Kentucky, the courts have engrafted upon the rule prevalent in England, and in most of our States an exception of the cases where the injured servant was subordinate in grade to, and subject to the authority of the servant from whose negligence the injury resulted.—*L. M. R. Co v. Stevens*, 20 Ohio, 415; *L. & N. R. R. Co. v. Collins*, 5 American Law Reg. 265; *S. C.*, 1 Redfield on Railways,. 527, *n.* Judge Redfield, in a note to his work on Railways, (1 Vol. 532), remarks in reference to that rule, that he should regard it as more salutary than the present, but admits that the general current of authority is in the opposite direction; yet, in a previous note, p. 525, the learned author had said that there seemed to be no serious objection to the English rule, with the qualification stated in *Wiggett v. Fox*, 36 E. L. & E. 486.

In Indiana, the rule has been adopted, that the railroad is liable to a servant for an injury by his fellow servant, when they are employed in different departments.— *Gillenwater v. M. & I. R. Co.*, 5 Ind. (Post) 339; *Fitzpatrick v. N. A. & S. R. Co.*, 7 Ind. (Post) 436.

In Wisconsin, the distinctions made in Ohio, Kentucky and Indiana, are repudiated, and the court boldly confiding in its own convictions with the encouragement given by the Scotch authority, applies the doctrine of *respondeat superior* to the railroad company, one of whose servants had been injured by the negligence of another.—*Chamberlain v. M. & M. R. R. Co.*, 11 Wis. 238. *Sendder v. Woodbridge, Kelly's* (Ga.) R. 195, is not authority against the English rule, which, as we have seen, is adopted in this State. On the contrary, it recognises the rule, but establishes, upon principles of humanity and of policy peculiar to the state of slavery, an exception of cases of injury to slaves.

The proposition, which bases the liability on the superiority of grade of the negligent servant, and the subordination to him of the injured servant, is, in our judgment, not founded in adequate reason. It can make no difference to the breakman whether he is injured by the carelessness of another breakman, in some remote part of the train, or of the engineer or conductor, nor can it make any difference whether a fireman is injured by the negligence of the engineer who directs him, or of the machinist who is charged with fitting the engine for the road. Protection is equally difficult to the injured party in all of the cases. There can be no reason for distinction in the nature of the employer's duty, dependent upon the relation of the injured and negligent parties. The employer's obligation to his servant in reference to fellow servants must be the same in all the cases. If the corporation is regarded by the law as present, and doing what its servant does in one case, it should be so regarded in every other; *qui facit per alium facit per se*, can be applied with no greater propriety in one case than another.

The *maxim, respondeat superior*, applied in favor of a servant injured by a fellow servant in *Priestly v. Fowler*,

*supra*, is shown to be unreasonable by an irresistible array of its absurd consequences. We need not reproduce them. The reasoning is conclusive, without the aid of the *reductio ad absurdum*. The servant pays nothing for his transportation. He is compensated for his service according to an agreed estimate of its value, in which the element of its perils is considered. The master can do nothing more for the safety of himself, or his family and property, than to be careful to select competent and fit servants. To inflict a penalty upon him for not doing more for his servant, is unreasonable. As long as human agencies shall be imperfect, accidents must be incident to every business requiring caution and diligence. When the master has selected competent and fit agencies, those negligencies are but risks of the business, which the servant himself must take, as the master is bound to do. After the employer has furnished competent and fit employees, the prevention of negligence on the part of any one of them is certainly as much within the power of the others as in that of the employer. Why then should the employer be responsible to one for the negligence of another?

Besides, there is a principle of public policy which underlies the rule. The tendency of the rule is to quicken the zeal and vigilance of servants, to prevent the negligence of their fellow servants, and avoid the consequences of it. The doctrine of *respondeat superior* rests upon principles of public policy which have no application here. Indeed, the rule of policy is reversed. The safety of the public, which must trust to the employees of railroads, is best consulted by impressing upon each, that his own interest is inseparably blended with the safety of the passengers; and he is best stimulated to the utmost effort to prevent negligence in others, and obviate their destructive consequences by the knowledge that, for injury sustained, he has no redress save against the wrong doer. He would be an unwise guardian of the public weal, who would relinquish any guaranty, however slight, of the fidelity and diligence of those agents, who, beyond the sight of their employers, guide the perilous and powerful machinery of railroad transportation. It is impossible for those who represent

the legal personality of a corporation to otherwise secure complete and safe repairs of engines than through the agency of competent and proper mechanics. If it has employed the agency of such mechanics in that duty, and no personal blame attaches to it, it will not be responsible, if a defect not remedied in consequence of the negligence of such mechanic shall have caused an injury to another servant. Without commenting upon them, we refer to the authorities collected by Judge Redfield, in his work on Railways, vol. 1, § 8, pp. 520, 543, and in the briefs of counsel.

We conclude that the second charge was erroneous, in deducing the liability of the defendant from the failure of its servants to effectually repair the engine and remedy a known defect, although there may have been no want of proper care and diligence on the part of the defendant.

3. The third charge given upon the plaintiff's request lays down alternative hypotheses, upon each of which it asserts the defendant's liability. The charge upon the former hypothesis is, that if the plaintiff was by reason of a defect in the engine, neither known to him nor open to ordinary observation, exposed to unusual risks, and received the injuries complained of, and the defendant might have known of such defect by ordinary care, then the defendant is liable. Whether this charge, as an abstract proposition, would be correct, if there were no other facts in the case than those which it brings to view, it is not necessary for us to decide. A charge in a suit on a promissory note that the defendant is liable, if he executed the note, may be very correct if there is no other evidence, but it would be very incorrect if there were evidence conducing to show a payment. If the charge here were otherwise correct, it is fatally defective, because it excludes from the jury entirely the defensive matter in the case. If the engine was defective, and it was placed in the hands of competent and fit mechanics to repair, and the use of the engine, without a cure of the defect, when the plaintiff was injured, was the result of the negligence of such mechanics, the defendant would not be liable. The court could not properly take from the jury the consideration of the defense set up, in

reference to which there was evidence. For a like reason the latter proposition of the charge is erroneous.

4. The fourth charge is erroneous for reasons obvious from our comments upon the third.

5. The fifth charge given made notice of a defect in the engine to any agent of the defendant, no matter what might be the scope of his agency, notice to the defendant. This charge was obviously erroneous. The principle, which should govern in reference to this subject, is indicated in our remarks upon the first charge.

6. The sixth charge, given upon the plaintiff's request, presents the fact of the engines being unsafe on account of its make and construction, and of injury to the plaintiff, caused by the want of safety resulting from that cause. No steam engine can, in strictness of language, be absolutely safe, but the expression in the charge is to be considered in reference to the nature of the subject. If the defendant employed an engine from its make and construction, unsafe in that sense, and knew thereof, or would have known thereof by the exercise of reasonable care and diligence, it would be responsible to one of its servants for injuries caused by such defect in make and construction, after it was known, or ought to have been known, to the defendant, if the defect was not known to plaintiff. But the charge infers a knowledge of the unsafeness growing out of the make and construction from the use of such engines for several years. Certainly such use would be a circumstance which might be argued to the jury on the question of notice, but the charge cannot be correct, unless notice is a legal presumption from such use. We do not think it is, and the charge is therefore erroneous. It might be, per adventure, that in the use of the engines the unsafeness had never been developed, and if so, the force of the fact would be lessened, if not destroyed.

7. The seventh charge given is erroneous for reasons apparent from application of our remarks upon the third and fourth charges.

8 and 9. The proposition of law involved in the eighth and ninth charges are correct.—1 Redfield on Railways, 625; 2 ib. 220, 225.

The nine charges herein before noticed, were given by the court upon the plaintiff's request. The court seems, from the bill of exceptions, to have given, *mero motu*, an additional charge. That charge a majority of the court deem a fair and correct statement of the law, except in so far as it directs that notice to persons, whose duties were such that authority to receive such notice would be within the proper scope of their agency, is notice to the defendant. The question whether authority to receive notice of a fact was within the scope of the duties of an agency, must be, upon ascertained facts, a question of law, and should not be referred to the jury. The principle which should govern this question is discussed in our remarks upon the second charge given by the court upon the plaintiff's request.—See, also, Angel & Ames on Corporations, § 305 ; Story on Agency, § 140.

Judge, J., thinks the entire charge unobjectionable ; the other judges regard it as objectionable for the reason above stated. To the qualifications of the first charge given upon defendant's request, there can be no objection, unless it be understood to affirm what is objected to in the charge last above noticed.

The second charge requested by the defendant, involves a question of pleading, which we do not decide, because it can be obviated on another trial.

The court erred in the refusal of the third and fourth charges requested by the defendant ; it should have given them both.

Reversed and remanded.